## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | CRIMINAL ACTION |
| | : | |
| v. | : | |
| | : | |
| NATHANIEL RODRIGUEZ | : | No. 16-14-1 |

### MEMORANDUM

PRATTER, J.                                                                                    APRIL 17, 2023

Nathaniel Rodriguez seeks compassionate release under 18 U.S.C. § 3582(c)(1)(A)(i), on the basis of her physical and psychological conditions, the risk of harm from the COVID-19 virus, and alleged assaults she has experienced while in custody. She also seeks appointment of counsel to aid her in amending this motion. Because she has not met her burden to show that these matters rise to the level of "compelling and extraordinary" reasons warranting her release, she has been fully vaccinated, and early release would not reflect the severity of her crimes, the Court denies her motions.

### BACKGROUND

#### I.        Ms. Rodriguez's Motion for Compassionate Release

On November 6, 2015, Ms. Rodriguez approached a woman walking to work in Philadelphia in the early hours of the morning.[1] Ms. Rodriguez demanded money while pointing what appeared to be a handgun. After the woman showed Ms. Rodriguez that she had no cash in her wallet, Ms. Rodriguez seized the woman's debit card and phone and forced her to walk to several nearby ATMs. Eventually, the victim was able to withdraw $300, which Ms. Rodriguez seized before jumping into a cab, throwing the victim's phone at her, and fleeing.

---

[1]       Because Ms. Rodriguez identifies as transgender and refers to herself using she/her pronouns in her motions, the Court will do the same throughout this memorandum.

On November 11, 2015, Ms. Rodriguez followed another woman into a Philadelphia parking garage elevator in the early morning. Ms. Rodriguez told the victim she had a gun, revealed something metallic inside her jacket pocket, and told the victim to drive Ms. Rodriguez out of Center City. Ms. Rodriguez seized the victim's cell phone, forced the victim into her car, and directed her to drive to an ATM. During the drive, Ms. Rodriguez located the victim's driver's license and told the victim she knew where she lived, in the event the victim attempted to somehow escape Ms. Rodriguez. After several failed attempts to withdraw hundreds of dollars from an ATM, Ms. Rodriguez drove the victim to a gas station. The gas station cashier, noticing that the victim appeared in distress, confronted Ms. Rodriguez and demanded that she return the victim's phone and car keys. Ms. Rodriguez fled in the victim's car, taking the victim's phone with her. She traded the victim's phone for cocaine before being stopped by police in the victim's car. Following her arrest, Ms. Rodriguez admitted to forcing both victims attempt to withdraw money on her behalf after implying that she had a gun.

Ms. Rodriguez pled guilty to two counts of kidnapping in violation of 18 U.S.C. § 1201(a). On March 24, 2017, the Court sentenced her to 228 months' imprisonment followed by five years of supervised release, as well as $509.23 in restitution and a $200 special assessment.

Ms. Rodriguez was incarcerated at United States Penitentiary Thomson ("USP Thomson") at the time she filed her two motions under 18 U.S.C. § 3582(c)(1)(A)(i). At the time of her first motion for compassionate release, she had approximately 124 months of her sentence remaining to serve.

In December 2021, Ms. Rodriguez moved for compassionate release, and in January 2022, she filed a second motion. She explains that she is at higher risk for COVID-19 due to medical

conditions, including diabetes and intestinal hemorrhaging, that she is suffering from poor mental health, and that she has been the victim of physical and sexual assault while incarcerated.

Ms. Rodriguez's medical records reflect that she is 47 years old and has diabetes, hypertension, hyperlipidemia, hypothyroidism, iron deficiency anemia, Hepatitis C, and neuropathy, all of which are controlled by medication. She is fully ambulatory and engages in normal activities of daily life. She received two doses of the Moderna vaccine for COVID-19 in 2021 as well as a Pfizer booster in 2022. Ms. Rodriguez has also requested that the Court appoint her counsel to assist her in amending her motion for compassionate release.

## II.      The Bureau of Prisons' Response to the COVID-19 Pandemic

The Bureau of Prisons ("the BOP") has taken many measures to "mitigate the spread of COVID-19 in [its] facilities" and protect the health of inmates. *BOP Modified Operations*, Bureau of Prisons, https://www.bop.gov/coronavirus/covid19_status.jsp (last visited March 4, 2023). The BOP limits outside visitors, limits inmate movement within the prison, and screens inmates, staff, contractors, and other visitors for symptoms. If an inmate tests positive, the BOP immediately places him or her in medical isolation. The BOP has also put thousands of eligible prisoners—the elderly, the terminally ill, and those who have almost finished their sentences—in home confinement. 18 U.S.C. § 3624(c)(2); 34 U.S.C. § 60541(g); CARES Act, Pub. L. No. 116-136, § 12003(b)(2), 134 Stat. 281, 516.

The BOP has offered vaccines to its staff members and inmates, including those at USP Thomson. *COVID-19 Vaccine Implementation*, Bureau of Prisons, https://www.bop.gov/ coronavirus/index.jsp (last visited March 4, 2023). Ms. Rodriguez was imprisoned at USP Thomson, which at the time she filed her motions housed approximately 941 total inmates. As of March 2023, there had been 646 inmates and 111 staff members who had recovered from

3

COVID-19, and no inmate had died of COVID-19 at USP Thomson. Tbl., Bureau of Prisons, https://www.bop.gov/coronavirus/ (last visited March 4, 2023).

LEGAL STANDARD

For the most part, courts "may not modify a term of imprisonment once it has been imposed." 18 U.S.C. § 3582(c). Before asking a court to modify a sentence, a prisoner must first have "fully exhausted" her administrative remedies within the prison before applying to a court.[2] 18 U.S.C. § 3582(c)(1)(A). Assuming a prisoner has met that threshold requirement, a court can, in limited circumstances, reduce a sentence for "extraordinary and compelling reasons." § 3582(c)(1)(A)(i). To count as extraordinary, the reason must be "[b]eyond what is usual, customary, regular, or common." *Extraordinary* (def. 1), *Black's Law Dictionary* (11th ed. 2019). To be compelling, the reason must be "irresistible," such that the court is "oblige[d]" or "force[d]" to reduce the sentence. *Compelling* (def. b.), in *Oxford English Dictionary* (2d ed. 1989); *Compel* (def. 1) in *id.* Examples of potential "extraordinary and compelling" reasons include terminal medical conditions, complications arising from old age, or difficult family circumstances. U.S.S.G. § 1B1.13 app. n. 1.[3] Once the prisoner has shown an extraordinary and compelling reason to

---

[2]     The Government concedes that Ms. Rodriguez has properly exhausted her administrative remedies here by submitting a request for compassionate release to the warden of USP Thomson on November 10, 2021. Gov.'s Resp. in Opp. to Def.'s Motion to Reduce Sentence, at 6. However, it appears that request was based on Ms. Rodriguez's diabetes, hypertension, nerve damage to feet, vision issues, rectal bleeding, hepatitis, and depression, and the attendant risks to her health presented by COVID-19. *Id.* As there is no certain indication that Ms. Rodriguez alleged physical or sexual assault in the request for release sent to the warden of USP Thomson, it is unclear whether those claims have been administratively exhausted. *See United States v. Raia*, 954 F.3d 594, 596–97 (3d Cir. 2020); *see also United States v. Rashid*, No. 20-2840, 2023 WL 1813598, at *2 (3d Cir. Feb. 8, 2023) ("The District Court correctly declined to consider these claims [because the defendant's] failure to exhaust administrative remedies barred the District Court from addressing them."); *United States v. Valenta*, No. 15-cr-161, at *1 (W.D. Pa. Apr. 7, 2020) ("To properly exhaust administrative remedies, . . . the administrative complaint must raise the same claims asserted in the federal court filing."); *United States v. Briston*, No. 05-cr-321, 2022 WL 5109085, at *3 ("Part of 'strict compliance' with the exhaustion requirement is that the BOP be given the opportunity to consider the same request made to the court.").

[3]     On its face, U.S.S.G. § 1B1.13 governs a "motion of the Director of the Bureau of Prisons" for compassionate release. Thus, this "policy statement is not binding on prisoner-initiated motions." *United*

4

warrant a sentence reduction, the Court must then consider the sentencing factors, set out in 18 U.S.C. § 3553, to decide if the sentence *should* be reduced, and by how much. 18 U.S.C. § 3582(c)(1)(A). The defendant seeking a reduction in her sentence "has the burden to prove extraordinary and compelling reasons exist." *United States v. Adeyemi*, 470 F. Supp. 3d 489, 512 (E.D. Pa. 2020).

DISCUSSION

Ms. Rodriguez presents three reasons why the Court should grant her compassionate release: (1) physical medical conditions that place her at increased risk of becoming severely ill from a COVID-19 infection, (2) serious mental health conditions, and (3) the alleged physical and sexual assaults she has suffered while incarcerated. *See* Doc. No. 63. The Government opposes Ms. Rodriguez's motion. The Court concludes that, to the extent they are administratively exhausted, none of Ms. Rodriguez's asserted reasons are "extraordinary and compelling" and, even if they were, the sentencing factors strongly counsel against her early release.

**I.    Ms. Rodriguez Has Not Shown Any "Extraordinary and Compelling" Reasons**

In order to demonstrate an "extraordinary and compelling" medical reason sufficient to qualify for compassionate release, a prisoner must show that she suffers from "a serious physical or medical condition . . . that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover." U.S.S.G. § 1B1.13 app. n.1(A)(ii). Ms. Rodriguez, however, does not have any serious physical or mental condition that diminishes her ability to care for herself while in prison, even given the risk of a COVID-19 infection.

---

*States v. Andrews*, 12 F.4th 255, 260 (3d Cir. 2021). Still, it is highly persuasive authority that "sheds light on the meaning of extraordinary and compelling reasons." *Id.*

### A. **Ms. Rodriguez's Physical Medical Conditions Do Not Constitute Extraordinary and Compelling Reasons**

It is true that Ms. Rodriguez's diabetes, hypertension, and hepatitis "may" make her "more likely to get very sick from COVID-19." *Medical Conditions*, Centers for Disease Control & Prevention, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last visited Mar. 3, 2023). But Ms. Rodriguez does not argue that she is unable to care for herself or manage any of these conditions while in prison. Her medical records indicate that her conditions are adequately controlled by medication, and the Government contends that Ms. Rodriguez is able to engage in all the typical activities of daily life. Thus, there is no reason for the Court to grant her compassionate release on this basis. *See United States v. Dobson*, No. 08-cr-00134, 2021 WL 1037852, at *4 (E.D. Pa. Mar. 18, 2021) (collecting cases).

Moreover, Ms. Rodriguez had already received three doses of a COVID-19 mRNA vaccine when she filed her motions for compassionate release. The Pfizer, Moderna, and other mRNA vaccines have been documented as highly effective against severe illness from COVID-19 and identified variants such as the Delta and Omicron, particularly with booster shots administered as recommended. *See New CDC Studies: COVID-19 Boosters Remain Safe, Continue to Offer High Levels of Protection Against Severe Disease Over Time and During Omicron and Delta Waves*, Centers for Disease Control & Prevention (Feb. 11, 2022), https://www.cdc.gov/media/releases/2022/s0211-covid-19-boosters.html (last visited Mar. 4, 2023).

The widespread availability of COVID-19 vaccines virtually eliminates the risk of death or serious injury as a basis for compassionate release. *Garrett v. Murphy*, 17 F.4th 419, 433 (3d Cir. 2021). "[F]or the vast majority of prisoners, the availability of a vaccine makes it impossible to conclude that the risk of COVID-19 is an 'extraordinary and compelling' reason for immediate

release." *United States v. Broadfield,* 5 F.4th 801, 803 (7th Cir. 2021); *accord United States v. Rivera,* No. 10-cr-632, 2022 WL 889048, at *4 (E.D. Pa. Mar. 25, 2022).

### B. Ms. Rodriguez's Mental Health Conditions Also Do Not Constitute Extraordinary and Compelling Reasons

Ms. Rodriguez also fails to persuade the Court that her mental health conditions are so serious as to necessitate her early release on this basis. To the contrary, Ms. Rodriguez's medical records suggest that she is capable of coping with her depression and denies any current thoughts of self-harm or presently being in crisis.

Because she has failed to show how her mental health conditions prevent her from "provid[ing] self-care within the environment of a correctional facility," Ms. Rodriguez has not demonstrated an extraordinary or compelling reason to justify compassionate release. U.S.S.G. § 1B1.13 app. n.1(A)(ii).

### C. Ms. Rodriguez's Claims of Physical and Sexual Assault

Ms. Rodriguez also seemingly sets forth, as a basis for her compassionate release, that she has been targeted by other inmates as a transgender woman for physical and sexual assault while incarcerated. As noted above, if this basis for relief was not previously raised with the warden, the Court may not resolve this claim for failure to comply with the exhaustion requirement. That is because the Third Circuit Court of Appeals has required "strict compliance" with the exhaustion requirement in § 3582(c)(1)(A). *See Raia,* 954 F.3d at 597 (finding that the exhaustion requirement acts as "a glaring roadblock" to motions for compassionate release). But as it is unclear whether Ms. Rodriguez had already raised this basis for relief with the warden, the Court will *consider* the merits of the claim, regardless of exhaustion, in the hopes that this may provide some clarity to Ms. Rodriguez should she seek to file another motion for compassionate release.

Ms. Rodriguez states that she was physically and sexually assaulted approximately four times by fellow inmates who sought to infringe upon her freedom of self-expression. Ms. Rodriguez has made similar claims of sexual assault and retracted them.

While these allegations are disturbing and concerning, construing these allegations as a claim that Ms. Rodriguez is being held in unconstitutional conditions of confinement, a motion for compassionate release is not the proper vehicle to bring such a claim. *See Leamer v. Fauver*, 288 F.3d 532, 543 (3d Cir. 2002) (explaining that a challenge to a condition of confinement "is a challenge properly brought under § 1983"); *Doe v. Pa. Bd. of Prob. & Parole*, 513 F.3d 95, 99 n.3 (3d Cir. 2008); *see also United States v. Crespo*, No. 13-cr-428, 2022 WL 3572846, at *4 n.5 (D.N.J. Aug. 19, 2022) ("[A] motion in a criminal case is not the proper avenue to address allegations of improper treatment within a jail or prison." (quoting *United States v. Greene*, No. 06-cr-312, 2022 WL 3354745, at *4 (D.D.C. Aug. 12, 2022)). Therefore, even if this claim had been brought before Thomson's warden, it would not constitute an "extraordinary and compelling" reason for Ms. Rodriguez's release.

## II.    The Sentencing Factors Also Counsel Against Ms. Rodriguez's Release

Even if Ms. Rodriguez had demonstrated an extraordinary and compelling reason for her release, which she has not, the 3553(a) sentencing factors strongly counsel against reducing her sentence. 18 U.S.C. § 3582(c)(1)(A); 18 U.S.C. § 3553(a). Ms. Rodriguez's sentence of 228 months reflects the seriousness of her offense. 18 US.C. § 3553(a)(2)(A). Ms. Rodriguez admitted to threatening two women, on separate occasions, made them believe that she had them at gun point, forced them to take her to ATMs, and, on the second occasion, stole a victim's car after forcing her to drive from ATM to ATM in an attempt to steal hundreds of dollars. The victims stated in their presentencing report interviews that Ms. Rodriguez's attacks had traumatized them. The first victim required seven months of therapy to cope with her experience. The second victim

of Ms. Rodriguez's kidnappings told the presentence investigator that she thought Ms. Rodriguez was going to kill her and suffered months of sleeplessness and random episodes of anxiety. Furthermore, Ms. Rodriguez's imprisonment protects the public from further such conduct that might endanger others. *Id.* § 3553(a)(2)(C). Ms. Rodriguez has engaged in a variety of— sometimes extremely violent—crimes for over thirty years, including robbery and car theft in 1991 and 1992, gun possession, drug possession, and extortion for the return of a stolen car in 1996, distribution of narcotics in 1997, a prison escape in 2003, drug distribution in 2007, the stabbing of a woman with a fork and a subsequent beating in the presence of the victim's children in 2008, the assault of a woman with a knife in 2014, and retail theft in 2016. Ms. Rodriguez has continued this pattern of misconduct in BOP custody, where she has incurred eleven disciplinary infractions, including two infractions for fighting and two for assault with serious injury, in one case against a staff member. Her imprisonment also affords deterrence, both general and specific, against future similar criminal conduct. *Id.* § 3553(a)(2)(B). Plus, Ms. Rodriguez has an anticipated release date of May 5, 2032—that is, over 9 years remain on her sentence. *See United States v. Bullock*, 833 F. App'x 934, 935 (3d Cir. 2021) (per curiam) (granting motion for summary affirmance of denial of compassionate release after finding that district court did not abuse its discretion in considering the 3553(a) factors, including the inmate's substantial time remaining to be served).

Thus, even if Ms. Rodriguez had demonstrated an extraordinary and compelling reason qualifying her for compassionate release, the Court would still reject her motion under the applicable sentencing factors given Ms. Rodriguez's troubling criminal history and the seriousness of her kidnapping offenses.

III.     **Ms. Rodriguez Has Not Demonstrated That Appointment of Counsel Is Necessary to Present Her Motion for Compassionate Release**

Ms. Rodriguez requests that the Court appoint counsel to assist her in amending her motion for compassionate release because she "suffers from several mental disorders that [a]ffect [her] ability to properly prepare the . . . motion." Mot. for Appointment of Counsel at ECF 2.

"It is . . . clear that a defendant does not have a constitutional right to appointment of counsel when seeking compassionate relief." *United States v. Dorsey*, 520 F. Supp. 3d 681, 683 (E.D. Pa. 2021). "[C]ourts considering a request for counsel by an indigent civil litigant apply the following factors: (1) the plaintiff's ability to present his or her own case; (2) the difficulty of the particular legal issues; (3) the degree to which factual investigation will be necessary and the ability of the plaintiff to do such investigation; (4) the plaintiff's capacity to retain counsel on his or her own behalf; (5) the extent to which a case is likely to turn on credibility determinations; (6) whether the case will require testimony from expert witnesses, and (7) the merits of the plaintiff's claim." *United States v. Waters*, No. 12-cr-295-2, 2022 WL 874943, at *4 (E.D. Pa. Mar. 23, 2022) (citing *Tabron v. Grace*, 6 F.3d 147, 155–57 (3d Cir. 1993)).

Here, the *Tabron* factors weigh against appointing Ms. Rodriguez counsel to assist her in amending her motion for compassionate release. Although Ms. Rodriguez suggests that her mental health conditions preclude her from presenting her motion, she has adequately conveyed her arguments to the Court, and, moreover, the medical records she submits in support of her motion do not indicate that her depression meaningfully inhibits her thought processes. Motions for compassionate release do not present difficult legal issues, require factual investigations beyond the medical records already submitted by Ms. Rodriguez, turn on credibility determinations, or necessitate expert testimony. Most importantly, as discussed above, Ms. Rodriguez's motion lacks merit, particularly given how heavily the sentencing factors weigh against granting early release.

The Court therefore denies Ms. Rodriguez's request for appointment of counsel.

CONCLUSION

For the foregoing reasons, the Court denies Ms. Rodriguez's motions for compassionate

release and appointment of counsel. An appropriate order follows.

BY THE COURT:

GENE E.K. PRATTER
UNITED STATES DISTRICT JUDGE

11